UNITED STATES *v.* NEW YORK CORDAGE CO. (No. 3260)[1]

United States Court of Customs and Patent Appeals, April 14, 1930

*Charles D. Lawrence*, Assistant Attorney General (*William H. Futrell*, special attorney, of counsel), for the United States.

*Brooks & Brooks* (*Ernest F. A. Place* of counsel) for appellee.

[Oral argument, February 17, 1930, by Mr. Futrell and Mr. Place]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court.

[1] T. D. 43977.

Merchandise, consisting of three hemp yarns twisted together and tarred, known as marline and houseline, used on "shipboard for the operations of worming, serving, and seizing," and elsewhere to "tie articles that are exposed to the weather and water, such as tents, tarpaulins, awnings, * * * and also for suspending aerial cables," was assessed by the collector at the port of New York as "hemp cord, tarred, or otherwise treated," at 18¼ cents per pound, and in addition thereto, 5 cents per pound under paragraph 1004 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1004. * * * Threads, twines, and cords, composed of two or more yarns of flax, hemp, or ramie, or a mixture of any of them, twisted together, the size of the single yarn of which is not finer than eleven lea, 18¼ cents per pound; finer than eleven lea and not finer than sixty lea, 18¼ cents per pound and three-fourths of 1 cent per pound additional for each lea or part of a lea in excess of eleven; finer than sixty lea, 56 cents per pound; and in addition thereto, on any of the foregoing threads, twines, and cords when boiled, 2 cents per pound; when bleached, dyed, or otherwise treated, 5 cents per pound: *Provided,* That the duty on the foregoing threads, twines, and cords shall be not less than 30 per centum ad valorem.

The importer protested, claiming that the merchandise was dutiable as cordage at only 2½ cents per pound under paragraph 1005, which reads:

PAR. 1005. Cordage, including cables, tarred or untarred, wholly or in chief value of manila, sisal, or other hard fibers, three-fourths of 1 cent per pound; cordage, including cables, tarred or untarred, wholly or in chief value of sunn, or other bast fibers, but not including cordage made of jute, 2 cents per pound; wholly or in chief value of hemp, 2½ cents per pound.

Considerable evidence was introduced by the parties on the trial below. The witnesses for the importer testified that the merchandise was known in the trade as cordage and was bought and sold as marline; that it is referred to on shipboard as "small stuff" and "fittings"; that, due to the fact that it had been treated with tar, it was not suitable for use either as twine or as cord; and that when cord is tarred it ceases to be cord and becomes cordage.

The witnesses called by the Government testified, in substance, that the merchandise was twine, tarred; and that it was not known in the trade as cordage, but was bought and sold as marline and houseline. Some of these witnesses, and at least one of the witnesses called by the importer, testified that in the trade and commerce of the United States the term cordage was "limited to merchandise three-sixteenths of an inch in diameter and over." However, but one witness testified that the quoted commercial designation of cordage was definite, uniform, and general. Under these circumstances, and in view of the fact that the evidence is conflicting, we must hold that commercial designation has not been established.

The decision of the trial court sustaining the protest is based, to a considerable extent, if not entirely, upon legislative adoption of judicial decisions and long-continued administrative practice.

It is contended by counsel for appellee that the court below in its decision in Abstract 28429, T. D. 32488, decided May 3, 1912, held that marline was dutiable as cordage under paragraph 339 of the Tariff Act of 1909, rather than as twine under paragraph 340 of that act; that paragraphs 339 and 340 of that act were reenacted without any change of language, except as to the rates of duty, as paragraphs 268 and 269, respectively, of the Tariff Act of 1913; that, in turn, these paragraphs were reenacted, "without material change of text," as paragraphs 1004 and 1005, respectively, of the Tariff Act of 1922; that, following the decision in Abstract 28429, T. D. 32488, *supra*, the administrative practice has been to assess marline as cordage, and that this practice continued without interruption until April 10, 1924, when, by order of the Treasury Department, T. D. 40114, the practice was changed, and thereafter collectors of customs have assessed merchandise of this character under paragraph 1004, *supra*; that, in the Summary of Tariff Information, 1920, the Tariff Commission called the attention of the Congress to the decision of the court below in Abstract 28429, T. D. 32488, *supra;* and that the Congress has approved and adopted that decision.

Paragraphs 268 and 269 of the Tariff Act of 1913 read as follows:

268. Cables and cordage, composed of istle, Tampico fiber, manila, sisal grass or sunn, or a mixture of these or any of them, ½ cent per pound; cables and cordage made of hemp, tarred or untarred, 1 cent per pound.

269. Threads, twines, or cords, made from yarn not finer than five lea or number, composed of flax, hemp, or ramie, or of which these substances or any of them is the component material of chief value, 20 per centum ad valorem; if made from yarn finer than five lea or number, 25 per centum ad valorem.

With reference to paragraph 268, *supra*, the Summary of Tariff Information, 1920, contains the following:

*Marline* used for serving around wire ropes, cables, etc., is dutiable as hemp cordage under this paragraph and not as hemp twine. (Abstract 28429, T. D. 32488, of 1912.)

Had the Congress reenacted paragraph 269 of the Tariff Act of 1913 as paragraph 1004 of the Tariff Act of 1922, without any material change of language, we would have no hesitation in agreeing with the decision of the court below and with the contention of counsel, namely, that the Congress had adopted the decision in Abstract 28429, T. D. 32488, *supra*, and had approved the administrative practice of assessing marline under the provisions for cordage contained in prior acts. However, the Congress did not reenact paragraph 269 of the Tariff Act of 1913 as paragraph 1004 of the Tariff Act of 1922. On the contrary, the Congress inserted language in paragraph 1004

which did not appear in either paragraph 340 of the act of 1909, or paragraph 269 of the act of 1913. This language is as follows:

\* \* \* and in addition thereto, on any of the foregoing threads, twines, and cords when boiled, 2 cents per pound; *when bleached, dyed, or otherwise treated, 5 cents per pound* \* \* \*. [Italics ours.]

It is obvious that the words "otherwise treated" do not refer to boiling, bleaching, or dyeing, as threads, twines, and cords thus treated are expressly provided for in the paragraph. Evidently, then, the words were intended to relate to threads, twines, and cords to which some other special process had been applied. Twines and cords treated with tar have been specially processed—treated otherwise than by bleaching or dyeing.

In view of these obvious facts, how can it be seriously argued that the Congress intended, by the enactment of paragraphs 1004 and 1005, *supra*, to adopt the decision of the court below in Abstract 28429, T. D. 32488, or to approve the administrative practice which followed that decision?

In the case of *Sunde & D'Evers Co. et al.* v. *United States*, 17 C. C. P. A. 24, T. D. 43321, we held that certain *tarred* halibut lines, composed of two or more yarns of hemp, twisted together, and used as fishing lines, were dutiable under paragraph 1004, *supra*. We there said:

In view of the fact that the Congress has provided for "cords" in paragraph 1004, and for "cordage" in paragraph 1005, it is fair to assume that it was intended to distinguish for tariff purposes between "cords" and "cordage." It so happens, however, that the articles in question are within the common meaning of each of those tariff terms. Obviously, then, if they are to be excluded from the provisions for "cords" in paragraph 1004, it must be by virtue of commercial designation. Having failed to make such proof, appellants have failed to make a case, unless the articles are more specifically provided for as "cordage" in paragraph 1005 than as "cords" in paragraph 1004.

The term "cordage" is a generic term and includes "cords," as a species. Obviously, the term "cordage" is more comprehensive and therefore less specific than the term "cords."

It clearly appears from the record that marline is twine treated with tar. The purpose of the tarring process is to make the twine suitable for a variety of outdoor uses and to prevent it from deteriorating when exposed to the weather.

We are of opinion that the merchandise is provided for in paragraph 1004, and that the provision therein for twine, bleached, dyed, or otherwise treated, is more specific for twine treated with tar than the genera provision for cordage, tarred or untarred, contained in paragraph 1005.

For the reasons stated, the judgment is *reversed*.

DISSENTING OPINION

GARRETT, Judge: I respectfully dissent·from the conclusion of the majority in this case, it being my opinion that in the light of the legislative history the decision of the court below was correct and should be *affirmed.*